**HABBA MADAIO & ASSOCIATES LLP**
Alina Habba, Esq.
N.J. Bar Number 018592010
1430 US Highway 206, Suite 240
Bedminster, NJ 07921
(908) 869-1188
*Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MICHAEL EMERSON, ESTATE OF ALBERT C. ROBERTS BY BRIAN ROBERTS, ADMINISTRATOR AD PROSEQUENDUM, AND ESTATE OF MICHELE DESBIENS BY PAUL DESBIENS, ADMINISTRATOR AD PROSEQUENDUM, individually on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**ANDOVER SUBACUTE REHABILITATION CENTER I, ANDOVER SUBACUTE REHABILITATION CENTER II, ALTITUDE INVESTMENTS, LTD, ALLIANCE HEALTHCARE, HEALTHCARE SERVICES GROUP, JOHN DOES 1 through 100, said names being fictitious and unknown persons, and ABC CORPORATIONS 1 through 100, said names being fictious and unknown entities,**<br><br>**Defendants.** | **CIVIL ACTION NO.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

This action is commenced by Plaintiffs, MICHAEL EMERSON, ESTATE OF ALBERT C. ROBERTS BY BRIAN ROBERTS, ADMINISTRATOR AD PROSEQUENDUM, and ESTATE OF MICHELE DESBIENS BY PAUL DESBIENS, ADMINISTRATOR AD PROSEQUENDUM (collectively, "Plaintiffs") individually and on behalf of all others similarly situated, by and through their undersigned attorneys, alleges as follows:

**PARTIES**

1. Michael Emerson ("Emerson") is a resident of the state of New Jersey and, at all relevant times herein, a resident patient at Andover Subacute Rehabilitation Center I and Andover Subacute Rehabilitation Center II.

2. Brian Roberts ("B. Roberts") is a resident of the State of New Jersey and the nephew of decedent, Albert C. Roberts ("A. Roberts"), who was, at all relevant times herein, a resident patient at Andover Subacute Rehabilitation Center II. B. Roberts is the administrator ad prosquendum for A. Robert's estate.

3. Paul Desbiens ("P. Desbiens") is a resident of the State of New Jersey and the son of decedent, Michele Desbiens, ("M. Desbiens"), who was, at all relevant times herein, a resident patient at Andover Subacute Rehabilitation Center I and Andover Subacute Rehabilitation Center II. P. Desbiens is the administrator ad prosquendum for M. Desbien's estate.

4. The plaintiffs, Michael Emerson, Estate of Albert C. Roberts by Brian Roberts, administrator ad prosequendum, and Estate of Michele Desbiens by Paul Desbiens, administrator ad prosequendum (collectively, "Plaintiffs"), bring this action on behalf of themselves and/or their respective estates and on behalf of all others similarly situated (the "Class") including decedents, administrators, next of kin, heirs, etc.

5. Defendant, Andover Subacute Rehabilitation Center I ("Andover I") is a New Jersey domiciled long-term care facility doing business at 1 Obrien Lane, Lafayette Township, New Jersey 07848.

6. Defendant Andover I is a "nursing facility" within the meaning of 42 U.S.C. § 1396r and obligated to comply with requirements set forth under the 1987 Omnibus Reconciliation

Act (OBRA), the Federal Nursing Home Reform Amendments, 42 U.S.C. § 1396r, and implementing regulations thereunder.

7. Defendant, Andover Subacute Rehabilitation Center II ("Andover II") is a New Jersey domiciled long-term care facility doing business at 99 Mulford Road, Lafayette Township, New Jersey 07848.

8. Defendant Andover II is a "nursing facility" within the meaning of 42 U.S.C. § 1396r and obligated to comply with requirements set forth under the 1987 Omnibus Reconciliation Act (OBRA), the Federal Nursing Home Reform Amendments, 42 U.S.C. § 1396r, and implementing regulations thereunder.

9. Defendant, Altitude Investments, LTD ("Altitude"), is an entity doing busines in the State of New Jersey and the owner of Andover I and Andover II and/or the lessor of the building where the facilities are located, with a business address of 2201 Main Street, Evanston, Illinois 60202.

10. Defendant, Alliance Healthcare ("Alliance"), is a New Jersey business entity which oversees and/or manages the operations of Andover I and Andover II, with a business address of 1382 Lanes Mill Road, Lakewood, New Jersey 08701.

11. Defendant, Healthcare Services Group ("HSG"), is a New Jersey business entity with a business address of 261 Terhune Drive, Wayne, New Jersey 07470.

12. Defendants, John Does 1 through 100, are individuals whose identities are unknown to the plaintiffs, including, but not limited to, licensed health care professionals, employees, agents, administrators, aides, officers, managers, sanitation workers, orderlies, security officers and/or other duly authorized individuals who caused, contributed to, or are otherwise liable for the damages which are the subject of this action.

13. Defendants, ABC Corporations 1 through 100, are corporate entities are currently unknown to the plaintiffs, including, but not limited to, healthcare facilities, management companies, owners, operators and/or other entities that caused, contributed to, or are otherwise liable for the damages which are the subject of this action.

14. Upon information and belief, at all times material hereto, Defendants received Medicare funding from the federal government Medicaid funding from the state of New Jersey, and as such were acting under color of state law.

**JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because the Plaintiffs' federal nursing home regulation claims arise under the laws of the United States, specifically 42 C.F.R. § 483.1, et seq. and 42 U.S.C.A. § 1395(i)-1, et seq.

16. This Court has personal jurisdiction over Defendants because they are registered with the Secretary of State to do business in the State of New Jersey, and the wrongful acts alleged in this Complaint were committed in the State of New Jersey.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because at least one Plaintiff resides in this District and a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District.

**FACTS COMMON TO ALL COUNTS**

18. As set forth below, Defendants consistently provided their residents with an inadequate, improper, and substandard level of care caused them to suffer serious physical harm and emotional distress. As a direct result, Defendants wrongfully deprived Plaintiffs and members of the Class of their rights under the Nursing Home Reform Act, 42 U.S.C. § 1396r et seq., and regulations promulgated thereunder.

**Plaintiffs Were Harmed by Defendants' Failure to bide by Federal and State Nursing Home Regulations**

19. The facts relevant to Plaintiff, Emerson, are as follows:

a. Since 2019, Emerson has, at different times, been a resident of both Andover I and Andover II. At the present time, Emerson is a resident of Andover II.

b. During his time as a resident of Andover I and Andover II, Plaintiff, Emerson, has been treated with a lack of dignity and respect, was subject to repeated physical and mental abuse at the hands of staff and/or other residents due to lack of proper supervision, was not provided with a safe and homelike environment, and was forced to contract numerous infections and/or communicable diseases due to Defendants' inadequate infection control protocols.

c. In or around early March 2020, Emerson sustained multiple bruises and a black eye while in the sole custody of an Andover II staff member.

d. In or around late March 2020, Emerson contracted COVID-19 while under the sole custody and care of Defendants.

e. Thereafter, Emerson's guardian ad litem and attorney-in-fact, Mary Jernick ("Jernick"), has made numerous attempts to obtain Emerson's medical records but Defendants have consistently denied her requests.

20. The facts relevant to Plaintiff, M. Desbiens, are as follows:

a. Since 2016, M. Desbiens has been a resident of Andover II.

b. During her time as a resident of Andover II, M. Desbiens, was provided with grossly deficient medical care and treatment, was treated with a lack of dignity

and respect, was forced to contract numerous infections and/or communicable diseases due to inadequate infection control protocols, was consistently denied access to medical records, and was not provided with a safe and homelike environment.

c. In early 2018, M. Desbiens began displaying symptoms of skin cancer on her left arm, including a large and visible growth protruding from her skin.

d. At or around that time, M. Desbien's legal guardian and attorney-in-fact, P. Desbiens, made multiple requests that Defendants tend to M. Desbien's condition and administer proper treatment.

e. Despite the apparent serious and life-threating nature of the ailment, Defendants refused P. Desbien's requests and continued to neglect M. Desbien's injuries.

f. In early 2020, a staff member advised P. Desbiens that M. Desbien's condition had worsened to such a degree that any treatment would require amputation of her left arm.

g. In or around late 2018, M. Desbiens underwent a surgical procedure at an outpatient facility and had a ureteral stent inserted into her body.

h. The surgeon instructed Defendants to have M. Desbiens return within six months to have the ureteral stent removed.

i. In or around mid-2019, P. Desbiens made numerous requests that Defendants bring M. Desbiens to the out-patient facility to have the ureteral stent removed.

j. Despite P. Desbiens insistence, Defendants refused to take any action to have the ureteral stent removed.

k. P. Desbiens was advised by a staff member of Andover II that the stent would only need to be removed if it became infected.

l. In or around March 2020, M. Desbiens, while in the exclusive care and custody of Defendants, contracted COVID-19.

m. M. Desbiens died on May 11, 2020 due to complications from COVID-19.

n. At the time of her death, M. Desbien's skin cancer remained entirely untreated and the ureteral stent remained in her body.

21. The facts relevant to Plaintiff, A. Roberts, are as follows:

a. At all relevant times herein, A. Roberts was a resident of Andover II.

b. During his time as a resident of Andover II, A. Roberts, was treated with a lack of dignity and respect, was forced to contract numerous infections and/or communicable diseases due to inadequate infection control protocols, was consistently denied access to medical records, and was not provided with a safe and homelike environment.

c. In mid-to-late March 2020, a COVID-19 outbreak occurred at the Facilities.

d. At or around that time, Roberts contracted COVID-19 while in the sole custody and care of Defendants.

e. On April 1, 2020, A. Roberts died while in Defendants' care.

f. After A. Roberts' death, his nephew, B. Roberts, made numerous attempts to contact Andover II in an attempt to receive an update on A. Roberts' status but was unable to reach anyone at the facility. B. Roberts was not informed of A. Roberts' death until several weeks later.

**Defendants' Breaches Were Widespread Throughout the Class Period**

22. The harm suffered by Plaintiffs as a direct result of Defendants' failure to comply with the applicable federal and state nursing home regulations, taken as a whole, is consistent with, and representative of, the harms suffered by the members of the Class as evidenced by the results of numerous inspections by the Department of Health and Human Services, Centers for Medicare & Medicaid Services ("CMS").

23. Since 2015, CMS which is responsible for overseeing, monitoring and reporting long-term care facilities' compliance with federal and state nursing home regulations, has performed numerous inspections of Andover I and Andover II (collectively, the "Facilities") and has repeatedly found each of the Facilities to be grossly deficient in many aspects.

24. In assessing Andover I, CMS has performed fourteen (14) inspections since 2015 and has noted its failure to comply to comply with at least twenty-five (25) distinct federal and state regulations on at least thirty-two (32) separate occasions.

25. In particular, within this five-year period, Andover I was found to have failed to comply with numerous provisions of the Requirements for States and Long Term Care Facilities established by CMS and set forth in 42 C.F.R. § 483 (the "Federal Regulations"), including without limitation: C.F.R. § 483.10(i)(1) (Andover I's duty to provide a safe, clean comfortable and homelike environment); C.F.R. § 483.15[1] (Andover I's duty to provide immediate access to any resident by any representative of the State); C.F.R. § 483.20(g) (Andover I's duty to provide assessments that accurately reflect the residents' status); C.F.R. § 483.21(a)(1)[2] (Andover I's duty to develop and implement a baseline care plan for each resident); C.F.R. § 483.21(b) (Andover I's duty to develop and implement a baseline care plan for each resident that includes measurable

[1] Citation issued by CMS under prior version of statute, C.F.R. § 483.10(e).
[2] Citation issued by CMS under prior version of statute, C.F.R. § 483.20(k)(3)(i).

objectives and timeframes to meet a resident's medical, nursing, and mental and psychosocial needs that are identified in the comprehensive assessment); C.F.R. § 483.25 (Andover I's obligation to ensure that the members of the Class and Plaintiffs received "treatment and care in accordance with professional standards of practice, the comprehensive person-centered care plan, and the resident's choices"); C.F.R. § 483.25(d) (Andover I's obligation to ensure that the resident environment remains as free of accident hazards as is possible and that each resident receive adequate supervision to prevent accidents); C.F.R. § 483.30 (Andover I's duty to ensure that each resident remain under the care of a physician, and that each physician must provide orders for the resident's immediate care and needs); C.F.R. § 483.60(d)(5)[3] (Andover I's obligation to provide appealing options of similar nutritive value to residents who choose not to eat food that is initially served or who request a different meal choice); C.F.R. § 483.60(i)[4] (Andover I's duty to procure food from sources approved or considered satisfactory by federal, state, or local authorities); C.F.R. § 483.45 (Andover I's obligation to provide routine and emergency drugs and biologicals to its residents); C.F.R. § 483.60(a); C.F.R. § 483.60(i); and (C.F.R. § 483.60(d)[5] (Andover I's duty to provide each resident with food prepared by methods that conserve nutritive value, flavor, appearance, and that meets individual needs)

26. In addition, during the same period, Andover I was cited for its failure to comply with the Standards for Licensure of Long-Term Care Facilities established by the New Jersey Department of Health and Senior Services, as set forth in N.J.A.C. § 8:39 (the "State Regulations") on numerous occasions, including without limitation: N.J.A.C. § 8:39-4.1(a)(12) (Andover I's obligation to treat residents with "courtesy, consideration, and respect for their dignity and

[3] Citation issued by CMS under prior version of statute, C.F.R. § 483.35(d).
[4] Citations issued by CMS under prior version of statute, C.F.R. § 483.35(i); violations cited on 8/25/15 and 9/27/16.
[5] Violations cited on 8/25/15, 9/27/16, 10/28/17 and 1/19/19.

individuality."; N.J.A.C. § 8:39-11.1 (Andover I's duty to ensure that nursing staff assess the nursing needs of each resident and provide each resident with an interdisciplinary care plan); N.J.A.C. § 8:39-11.2[6] (Andover I's obligation to ensure that a physician provide a comprehensive assessment for each resident and implement care plans, as enumerated in N.J.A.C. § 8:39-11.2(a)-(i); N.J.A.C. § 8:39-17.2(g)[7] (Andover I's duty to ensure that all food service facilities operate with safe food handling practices); N.J.A.C. § 8:39-17.4(a) (Andover I's duty to ensure that all residents receive a diet which corresponds to the physician's order, is served in the proper consistency, and provides nutrients and calories based upon current recommended dietary allowances of the National Academy of Sciences); N.J.A.C. § 8:39-21.1(d) (Andover 1's obligation to ensure that clean laundry shall be protected from contamination during processing, storage, and transportation within Andover I's facility); N.J.A.C. § 8:39-21.2 (Andover I's duty to properly maintain its laundry facilities); N.J.A.C. 8:39-27.1[8] (Andover I's duty to ensure that each resident receives all care and services needed to maintain the highest practicable level of physical emotional and social well-being); N.J.A.C. § 8:39-29.2(d) (Andover I's obligation to comply with mandatory drug administration policies and procedures, as enumerated in N.J.A.C. § 8:39-29.2(a)-(d); N.J.A.C. § 8:39-31.4(a) (Andover I's duty to provide and maintain a safe, clean, and orderly environment for residents); and N.J.A.C. § 8:39-31.2(e) (Andover I's obligation to ensure that the facility shall be kept in good repair and maintained without harm or jeopardy to residents).

27. As for Andover II, CMS has performed twenty-eight (28) inspections since 2015 and has cited the facility for fifty (50) regulatory violations. In addition, CMS graded the "scope and severity" of Andover II's deficiencies as level 'K,' the second-worst rating on a scale of A-L,

---

[6] Violations cited on 1/18/19 and 1/27/20.
[7] Violations cited on 8/24/15 and 10/27/17.
[8] Violations cited on 8/24/15 and 1/31/19.

which is indicative of a "pattern" of deficiencies that creates an "[i]mmediate jeopardy to resident health or safety."

28. Within said five-year period, Andover II was similarly found to have numerous, repeated violations of the Federal Regulations, including without limitation: C.F.R. § 483.10(g)(14)[9] (Andover II's duty to notify the resident, and the resident's representative, when there is a significant change in the resident's physical, mental, or psychosocial status, as enumerated in C.F.R. § 483.10(g)(14)(i)-(iv); C.F.R. § 483.10(g)(15)[10] (Andover II's obligation to disclose in its admission agreement its physical configuration and must specify the policies that apply to room changes between its different locations) ; C.F.R. § 483.10(i)[11] (Andover II's duty to provide each resident with a safe, clean, comfortable, and homelike environment); C.F.R. § 483.10(i)(7) (Andover II's obligation to maintain comfortable sound levels within each resident's environment); C.F.R. § 483.12(c) (Andover II's duty to ensure that all alleged violations involving abuse, neglect, exploitation or mistreatment, including injuries of unknown source and misappropriation of resident property, are reported immediately); C.F.R. § 483.12(c)(2) (Andover II's duty to have evidence that all alleged violations are thoroughly investigated); C.F.R. § 483.12(c)(3) (Andover II's obligation to prevent further potential abuse, neglect, exploitation, or mistreatment while the investigation is in progress); C.F.R. § 483.12(c)(4) (Andover II's duty to report the results of all investigations to the administrator or his or her designated representative and to other officials within 5 working days of the incident); C.F.R. § 483.10(i)[12] (Andover II's duty to establish and implement an admissions policy consistent with the requirements set forth in C.F.R. § 483.15(a)-(e)); C.F.R. § 483.20(f)(1) (Andover II's duty to encode data for each resident

[9] Violations cited on 11/26/19 and 4/21/20.
[10] Violations cited on 11/26/19 and 4/21/20.
[11] Violations cited on 11/26/19, 3/5/20, and 4/21/20.
[12] Citation issued by CMS under prior version of statute, C.F.R. § 483.15(i).

following the completion of a resident's assessment, as enumerated in § 483.20(f)(1)(i)-(vi)); C.F.R. § 483.20(f)(2) (Andover II's duty to ensure that it is capable of transmitting to the CMS System information for each resident contained in the MDS in a format that conforms to standard record layouts and data dictionaries, and that passes standardized edits defined by CMS and the State); C.F.R. § 483.20(f)(3) (Andover II's obligation to electronically transmit encoded, accurate, and complete MDS data to the CMS System); C.F.R. § 483.20(f)(4) (Andover II's duty to transmit data in the format specified by CMS or, for a State which has an alternate RAI approved by CMS, in the format specified by the State and approved by CMS); C.F.R. § 483.20(g)[13] (Andover II's duty to ensure that each assessment generated accurate reflect the resident's status); C.F.R. § 483.20(h)[14] (Andover II's duty to ensure that a registered nurse conduct each assessment with the appropriate participation of health professionals); C.F.R. § 483.20(i)[15] (Andover II's duty to ensure that registered nurses sign and certify assessments when completed); C.F.R. § 483.20(j)[16] (Andover II is subject to a civil money penalty, as staff certified material and false statements in a resident assessment, and/or caused another individual to certify a material and false statement in a resident assessment); C.F.R. § 483.20(l) (Andover II's duty to ensure that a notice of transfer or discharge must be made by the facility at least 30 days before the resident is transferred or discharged); C.F.R. § 483.21(b); C.F.R. § 483.25(b)(3)[17]; C.F.R. § 483.25(d)(1)[18]; C.F.R. § 483.25(d)(2)[19]; C.F.R. § 483.25(i); C.F.R. § 483.45(f); C.F.R. § 483.45(f)(1); C.F.R. § 483.60(b);

[13] Violations cited on 9/28/15 and 11/29/16.
[14] Violations cited on 9/28/15 and 11/29/16.
[15] Violations cited on 9/28/15 and 11/29/16.
[16] Violations cited on 9/28/15 and 11/29/16.
[17] Violations cited on 11/14/17, 10/29/18, 11/26/19, 3/5/20, and 3/13/20.
[18] Violations cited on 11/14/17 and 1/30/19.
[19] Violations cited on 11/14/17 and 1/30/19.

C.F.R. § 483.73(a); C.F.R. § 483.80(a)(1)[20]; C.F.R. § 483.80(a)(2)[21]; C.F.R. § 483.80(a)(4)[22]; C.F.R. § 483.80(e)[23]; and C.F.R. § 483.80(f)[24].

29. In addition, during the same period, Andover II was consistently cited for its repeated failures to comply with the State Regulations, including without limitation: N.J.A.C. § 8:39-4.1(a)(5) (Andover II's duty to ensure that residents be free from physical and mental abuse and/or neglect); N.J.A.C. § 8:39-4.1(5); N.J.A.C. § 8:39-11.2(b)[25] (Andover II's duty to ensure that each physician or advanced practice nurse order shall be executed by the nursing, dietary, social work, activities, rehabilitation or pharmacy service, as appropriate in accordance with professional standards of practice); N.J.A.C. § 8:39-11.2(e) (Andover II's obligation to ensure that a comprehensive assessment shall be completed for each resident within 14 days of admission); N.J.A.C. § 8:39-19.4(a)(1)[26] (Andover II's obligation to develop and implement written policies and procedures regarding infection procedures, which include Guidelines for handwashing and hospital environmental control); N.J.A.C. § 8:39-19.4(a)(2)[27] (Andover II's obligation to develop and implement written policies and procedures regarding infection prevention and control procedures which include guidelines for isolation precautions in hospitals); N.J.A.C. § 8:39-19.4(a)(3) (Andover II's obligation to develop and implement written policies and procedures regarding infection prevention and control procedures which include prevention and control of tuberculosis in facilities providing long-term care to the elderly); N.J.A.C. § 8:39-19.4(a)(4) (Andover II's obligation to develop and implement written policies and procedures regarding

---

[20] Violations cited on 10/29/18, 3/5/20, and 4/19/20.
[21] Violations cited on 10/29/18, 3/5/20, and 4/19/20
[22] Violations cited on 10/29/18, 3/5/20, and 4/19/20
[23] Violations cited on 10/29/18, 3/5/20, and 4/19/20
[24] Violations cited on 10/29/18, 3/5/20, and 4/19/20
[25] Violations cited on 11/26/19 and 3/5/20.
[26] Violations cited on 3/5/20 and 4/19/20.
[27] Violations cited on 3/5/20 and 4/19/20.

infection prevention and control procedures which include prevention of nosocomial pneumonia); N.J.A.C. § 8:39-19.4(a)(5) (Andover II's obligation to develop and implement written policies and procedures regarding infection prevention and control procedures which include prevention of catheter associated urinary tract infections); N.J.A.C. § 8:39-19.4(a)(6) (Andover II's obligation to develop and implement written policies and procedures regarding infection prevention and control procedures which include prevention of intravascular infections); N.J.A.C. § 8:39-19.4(6)(n) (Andover II's duty to ensure that personnel wash their hands with soap and warm water or use other effective hand sanitation techniques immediately prior to contact with residents); N.J.A.C. § 8:39-19.4(1); N.J.A.C. § 8:39-25.2(b)(1)[28] (Andover II's duty to provide nursing staff on the basis of the total number of residents multiplied by 2.5 hours/day); N.J.A.C. § 8:39-25.2(b)(2)[29] )[30] (Andover II's duty to provide nursing staff on the basis of the total number of residents receiving each service that is listed under N.J.A.C. § 8:39-25.2(b)(2)); N.J.A.C. § 8:39-27.1(a)[31] (Andover II's duty to ensure that each resident receives all care and services needed to maintain the highest practicable level of physical emotional and social well-being); N.J.A.C. § 8:39-29.2(a) (Andover II's duty to ensure that the pharmacy and therapeutics committee establish and enforce procedures for documenting drug administrations); N.J.A.C. § 8:39-29.2(d) (Andover II's duty to have a system to accurately identify recipients before any drug is administered.); N.J.A.C. § 8:39-29.7(c) (Andover II's duty to store and maintain controlled substances in accordance with the Controlled Dangerous Substances Act and all other federal and state laws); N.J.A.C. § 8:39-31.2(a) (Andover II's duty to ensure that personnel engaged in general maintenance activities receive orientation upon employment and education or training in principles

[28] Violations cited on 5/20/15 and 10/29/18.
[29] Violations cited on 5/20/15 and 10/29/18.
[30] Violations cited on 5/20/15 and 10/29/18.
[31] Violations cited on 9/28/15, 1/7/16, 11/14/17, 10/29/18, 11/26/19, 3/5/20, 3/13/20, and 4/19/20.

of asepsis, cross-infection control, and safe practices); N.J.A.C. § 8:39-31.2(e)[32] (Andover II's duty to ensure that the facility be kept in good repair and maintained without harm or jeopardy to residents); N.J.A.C. § 8:39-31.4(a)[33] (Andover II's duty to provide and maintain a safe, clean, and orderly environment for residents); and N.J.A.C. § 8:39-35.2(d)(3); and N.J.A.C. § 8:39-35.2(d)(3) (Andover II's duty to ensure that each resident's medical record contains complete transfer information from the sending facility).

30. In addition, during that time, CMS, which provides assessment ratings for long-term care facilities, rated on a scale of one to five (five being the highest score), provided scores for each of the Facilities. Andover I was given a 'three star' rating, which is classified as "average." Andover II was given a 'one star' rating, the lowest possible score, which is classified as "much below average."

31. Further, a CMS inspection report dated April 21, 2020, investigating the COVID-19 outbreak at Andover II in late March 2020, found that the facility was "not following infection control safety practices and guidance recommended by CMS and the Centers for Disease Control and Prevention (CDC), during a COVID-19 pandemic."

32. In particular, the report found that "the facility failed to ensure: 1) appropriate transmission based precautions were ordered and implemented (immediate isolation from asymptomatic roommates) for suspected COVID-19 residents…2) a system of surveillance to prevent the spread of infection (screening, tracking, monitoring and/or reporting of fever and other signs/symptoms of COVID-19)…3) staff properly used personal protective equipment (PPE) when caring for COVID-19 positive or COVID-19 suspected residents, 4) staff were properly trained to use the infrared forehead thermometer on staff, visitors and residents, 5) implementation of hand

[32] Violations cited on 11/29/16, 11/14/17, 3/1/19, and 3/5/20.
[33] Violations cited on 11/26/19 and 3/5/20.

washing practices consistent with CDC (Center for Disease Control and Prevention) guidelines to reduce the spread of infections and prevent cross-contamination during the COVID-19 pandemic, and 6) posting of contact/droplet precaution signage throughout the facility."

**Defendants Deceived Consumers Regarding the Quality of the Facilities**

33. Despite the extensive history of regulatory violations and poor assessment ratings, Defendants attempted to mislead consumers by holding out the Facilities as high-quality, regulatory-compliant facilities that provide an adequate level of care to its residents.

34. For example, since at least August 15, 2014 through the present, the Facilities' combined website (www.andoverrehab.com) has stated that the Facilities have an "excellent reputation with regulatory agencies and comply with stringent local, state and federal standards."

35. In addition, since at least October 2015 through the present, the Andover II-specific website (www.asrctwo.com) has stated that the facility "[p]rovides a physical safe and therapeutic environment."

36. Since at least 2017, the Facilities have been providing new residents with a "Policy on Resident Rights" which states that "Andover Subacute and Rehab Center Services is a nondiscriminatory facility providing a clean, safe environment regardless of age, race, religion, sex, nationality or disability."

37. Currently, the Andover II-specific website states that the facility "offer[s] the most qualified health care professionals, who are dedicated to providing the highest quality of care to all our residents…"

38. Plaintiffs and the Class Members chose the Facilities for their nursing home and/or rehabilitations needs based on Defendants' representations that the Facilities were high quality and compliant with applicable federal and state regulations. Were it not for the representations made

by Defendants that Plaintiffs relied upon, they would not have chosen the Facilities. For the reasons discussed *infra*, the Facilities failed to meet Defendants' promises that they would provide high-quality and regulatory compliant care to Plaintiffs.

39. Through their misrepresentations Defendants were able to charge a premium for their nursing home/rehabilitation services over what they would have been able to charge had they not misled Plaintiffs and the Class.

40. Plaintiffs would not have chosen the Facilities for Decedent's nursing home/rehabilitation services or would not have paid what they did had they known Defendants' representations regarding the quality and safety of the Facilities were false and deceptive.

41. As set forth below, the individual and class claims asserted herein are premised on Defendants' numerous violations of federal and state nursing regulations, as well as their unlawful conduct in misleading and deceiving the members of the Class and Plaintiffs by way of omitting pertinent information and/or making misrepresentations in falsely advertising the adequacy of the Facilities. The injuries sustained by the members of the Class and Plaintiffs were the direct, proximate, and foreseeable result of Defendants' aforementioned conduct.

## CLASS ALLEGATIONS

42. This action is properly brought as a Class Action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b) on behalf of Plaintiffs and all others similarly situated as members of the proposed Class.

43. Plaintiffs seeks certification of a Class initially defined as:

> All persons who, were residents and/or patients of Andover Subacute Rehabilitation I or Andover Subacute Rehabilitation II, during the applicable statute of limitations period.

44. The Class, of which Plaintiffs are a member, is readily identifiable.

45. The members of the Class are so numerous that joinder of the members of the Class would be impracticable. The precise number of members of the Class and their addresses are presently unknown to Plaintiffs but may be ascertained from Defendants' records. If deemed necessary by the Court, members of the Class may be notified of the pendency of this action by mail, supplemented by published notice.

46. This action involves common questions of law and fact which predominate over any questions affecting individual members of the Class, including, without limitation:

a. Whether Defendants violated applicable federal nursing home laws, including, but not limited to, 42 C.F.R. § 483.1, et seq.

b. Whether Defendants violated applicable state nursing home laws, including, but not limited to, N.J.S.A. 8:39-4, et seq. and N.J.S.A. 30:13-1, et seq.

c. Whether Defendants engaged in unfair, unlawful, deceptive, unconscionable commercial business practices in advertising the Facilities to customers;

d. Whether Defendants made false representations and/or purposefully failed to disclose pertinent information regarding the Facilities' compliance with applicable laws, codes and regulations;

e. Whether Defendants made false representations and/or purposefully failed to disclose pertinent information regarding the quality, safety and/or adequacy of the Facilities' services;

f. Whether Defendants' unlawful, unfair and deceptive practices harmed the members of the Class and Plaintiff; and

g. Whether the members of the Class and Plaintiffs are entitled to actual, statutory, or other damages and/or monetary relief.

47. Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiffs and the Class were injured through the substantially uniform misconduct described above. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class.

48. In addition, there are no defenses available to Defendants that are unique to Plaintiffs and Plaintiffs' interest are the same as those of the Class as a whole. Plaintiff does not have any interests antagonistic to those of the members of the Class.

49. Plaintiffs will fairly and adequately protect the interests of the Class because their interests are aligned with the members of the Class that he seeks to represent. In addition, Plaintiffs have retained competent counsel with significant experience in prosecuting complex and sophisticated civil litigations and class actions in the State of New Jersey.

50. A class action is superior to any other form of adjudicating the subject claims and no unusual difficulties are likely to be encountered in the management of this action. A class action will allow for efficient, orderly and expeditious resolution of the claims of the Class and will foster the economies of time, effort and expense. The adjudication of numerous individual actions by members of the Class would pose a significant risk of inconsistent and varying results. Moreover, given the identical nature of the members of the Class's claims and the absence of material or dispositive difference in the law upon which the claims are based, adjudication of this action will be easily manageable for the parties and the Court.

## COUNT I
## (VIOLATION OF 42 U.S.C. § 1983)

51. Plaintiffs re-assert and re-allege the allegations contained within the preceding paragraphs as if set forth at length herein.

52. Upon information and belief, at all times material hereto, Defendants received Medicare funding from the federal government Medicaid funding from the state of New Jersey, and as such were acting under color of state law.

53. Defendants are bound generally by the 1987 Omnibus Budget Reconciliation Act (OBRA) and the Federal Nursing Home Reform Act (FNHRA) which was contained within the 1987 OBRA. See 42 U.S.C. § 1396r; 42 U.S.C. § 1396a(w) (as incorporated by 42 U.S.C. § 1396(r).) Defendant is also bound generally by the OBRA/FNHRA implementing regulations found at 42 C.F.R. § 483, et seq., which served to define specific statutory rights set forth in the above-mentioned statues.

54. The FNHRA creates substantive rights for nursing home residents, which are enforceable pursuant to 42 U.S.C. § 1983, including but not limited to the right to:

a. Defendants violated 42 C.F.R. § 483.10 by failing to treat Plaintiffs and the Class with "respect and dignity" required by 42 C.F.R. § 483.10(e), by failing to properly and timely notify Plaintiffs and the Class of certain changes and other mandatory disclosures as required by 42 C.F.R. § 483.10(g), by failing to provide Plaintiffs and the Class with a "safe, clean, comfortable, and homelike environment" as required by 42 C.F.R. § 483.10(i), and by failing to otherwise comply with the requirements enumerated in 42 C.F.R. § 483.10.

b. Defendants violated 42 C.F.R. § 483.12 by failing to provide an environment where Plaintiffs and the Class are "free from abuse, neglect, misappropriation of resident property, and exploitation," and by failing to otherwise comply with the requirements enumerated in 42 C.F.R. § 483.12(a)-(c).

c. Defendants violated 42 C.F.R. § 483.20 by failing to conduct "comprehensive, accurate, standardized, reproducible" assessments of Plaintiffs and members of the Class and by failing to otherwise comply with the requirements enumerated in 42 C.F.R. § 483.20(a)-(k).

d. Defendants violated 42 C.F.R. § 483.21 by failing to develop and implement a sufficient "baseline care plan" for Plaintiffs and the Class and by failing to otherwise comply with the requirements enumerated in 42 C.F.R. § 483.21(a)-(c).

e. Defendants violated 42 C.F.R. § 483.25 by failing to provide ensure that the members of the Class and Plaintiffs received "treatment and care in accordance with professional standards of practice, the comprehensive person-centered care plan, and the resident's choices" and by failing to otherwise comply with the requirements enumerated in 42 C.F.R. § 483.25(a)-(m).

f. Defendants violated 42 C.F.R. § 483.5 by failing to employ and/or supervise "sufficient nursing staff with the appropriate competencies and skills sets to provide nursing and related services to assure resident safety and attain maintain the highest practicable physical, mental, and psychosocial well-being of each resident" and by failing to otherwise comply with the requirements enumerated in 42 C.F.R. § 483.35(a)-(f).

g. Defendants violated 42 C.F.R. § 483.45 by failing to ensure a medication error rate which does not exceed five percent or greater as required by 42 C.F.R. § 483.45(f)(1) and by failing to otherwise comply with the requirements enumerated in 42 C.F.R. § 483.45(a)-(f).

h. Defendants violated 42 C.F.R. § 483.60 by failing to provide Plaintiffs and the Class with a "nourishing, palatable, well-balanced diet that meets [their] nutritional and special dietary needs" and by failing to otherwise comply with the requirements enumerated in 42 C.F.R. § 483.60(a)-(i).

i. Defendants violated 42 C.F.R. § 483.73 by failing to comply with all applicable federal state and local emergency preparedness requirements and by failing to otherwise comply with the requirements enumerated in 42 C.F.R. § 483.73(a)-(f).

j. Defendants violated 42 C.F.R. § 483.80 by failing to "establish and maintain an infection prevention and control program designed to provide a safe, sanitary and comfortable environment and to help prevent the development and transmission of communicable diseases and infections" and by failing to otherwise comply with the requirements enumerated in 42 C.F.R. § 483.80(a)-(h).

55. As a proximate result Defendants' unlawful provision of care in violation of its regulatory and statutory responsibilities as above-described, the members of the Class and Plaintiffs sustained numerous injuries, including, but not limited to: receiving a substandard quality of medical care, being treated with a lack of dignity and respect, being subject to repeated physical and mental abuse at the hands of staff and/or other residents due to lack of proper supervision, not being provided with a safe and homelike environment, being forced to contract numerous infections and/or communicable diseases due to Defendants' inadequate infection control protocols, and being denied access to medical records. As such, Plaintiffs have has

suffered, and is entitled to recover the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiffs demand judgment for himself and the members of the Class as follows:

a. The Court enter a determination that this action is a proper class action pursuant to FRCP 23(a) and 23(b); and

b. The Court enter an order certifying the Class pursuant to pursuant to FRCP 23(a) and 23(b) and appointing the undersigned counsel as the representative thereof;

c. The Court enter an Order awarding declaratory and injunctive relief, as permitted by law, requiring Defendants to send formal notice to all members of the Class, advising them of the declaratory ruling, the pendency of the action, and of their respective rights;

d. The Court enter an Order requiring Defendants to pay to the members of the Class and Plaintiffs joint and several damages, economic, monetary and consequential damages, compensatory damages, punitive damages, treble damages and/or statutory damages;

e. The Court enter an Order awarding to Plaintiff, individually and on behalf of the members of the Class, pre-judgment and post-judgment interest to the extent allowable by law;

f. The Court enter an Order awarding to Plaintiff, individually and on behalf of the members of the Class, his expenses and costs of suit, including reasonable

attorneys' fees and reimbursement of reasonable expenses, to the extent allowable by law; and

g. For such other relief as the Court deems equitable, just and proper.

**COUNT II**
**(VIOLATION OF STATE NURSING HOME LAWS)**

56. Plaintiffs re-assert and re-allege the allegations contained within the preceding paragraphs as if set forth at length herein.

57. At all relevant times herein, Defendants failed to comply with the requisite, minimum standards of care set forth in N.J.S.A. 30:13-1, et seq. and N.J.S.A. 8:39-4, et seq.

58. Defendants violations of N.J.S.A. 30:13-1, et seq. include, but are not limited to, the following:

a. Defendants violated N.J.S.A. 30:13-3(c) by failing to admit "only that number of residents for which it reasonably believes it can safely and adequately provide nursing care."

b. Defendants violated N.J.S.A. 30:13-3(h) by failing to comply with "all applicable State and federal statutes and rules and regulations."

c. Defendants violated N.J.S.A. 30:13-5(j) by failing to provide to the members of the Class and Plaintiff a "safe and decent living environment and considerate and respectful care that recognizes the dignity and individuality of the resident, including the right to expect and receive appropriate assessment, management and treatment of pain as an integral component of that person's care consistent with sound nursing and medical practices."

d. Defendants violated N.J.S.A. 30:13-5(m) by depriving the members of the Class and Plaintiff of their "constitutional, civil or legal right[s]."

59. Defendants violations of N.J.S.A. 8:39-4, et seq. include, but are not limited to, the following:

a. Defendants violated N.J.S.A. 8:39-4.1(5) by subjecting the members of the Class and Plaintiff to "physical and mental abuse and neglect."

b. Defendants violated N.J.S.A. 8:39-4.1(a)(11) in preventing the members of the Class and Plaintiff from living in "safe, decent, and clean conditions in a nursing home that does not admit more residents than it can safely accommodate while providing adequate nursing care."

c. Defendants violated N.J.S.A. 8:39-4.1(a)(12) by failing to treat the members of the Class and Plaintiff with "courtesy, consideration, and respect for [his] dignity and individuality."

d. Defendants violated N.J.S.A. 8:39-4.1(a)(34) by violating preventing the members of the Class' and Plaintiff's "constitutional, civil, and legal rights" to which they are entitled by law.

60. As a direct, proximate and foreseeable result of Defendants' failure to comply with state nursing home regulations, N.J.S.A. 8:39-4, et seq., the members of the Class and Plaintiffs sustained numerous injuries, including, but not limited to: receiving a substandard quality of medical care, being treated with a lack of dignity and respect, being subject to repeated physical and mental abuse at the hands of staff and/or other residents due to lack of proper supervision, not being provided with a safe and homelike environment, being forced to contract numerous infections and/or communicable diseases due to Defendants' inadequate infection control protocols, and being denied access to medical records.

61. As a result of the foregoing, Plaintiffs and the members of the Class suffered injuries, incurred medical expenses, incurred economic loss, and suffered disfigurement, disability, pain and suffering, mental anguish, loss and injury, loss of enjoyment of life, and loss of dignity.

**WHEREFORE**, Plaintiffs demand judgment for himself and the members of the Class as follows:

a. The Court enter a determination that this action is a proper class action pursuant to FRCP 23(a) and 23(b); and

b. The Court enter an order certifying the Class pursuant to pursuant to FRCP 23(a) and 23(b) and appointing the undersigned counsel as the representative thereof;

c. The Court enter an Order awarding declaratory and injunctive relief, as permitted by law, requiring Defendants to send formal notice to all members of the Class, advising them of the declaratory ruling, the pendency of the action, and of their respective rights;

d. The Court enter an Order requiring Defendants to pay to the members of the Class and Plaintiffs joint and several damages, economic, monetary and consequential damages, compensatory damages, punitive damages, treble damages and/or statutory damages;

e. The Court enter an Order awarding to Plaintiff, individually and on behalf of the members of the Class, pre-judgment and post-judgment interest to the extent allowable by law;

f. The Court enter an Order awarding to Plaintiff, individually and on behalf of the members of the Class, his expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent allowable by law; and

g. For such other relief as the Court deems equitable, just and proper.

**COUNT III**
**(VIOLATION OF THE CONSUMER FRAUD ACT)**

62. Plaintiffs re-assert and re-alleges the allegations contained within the preceding paragraphs as if set forth at length herein.

63. The Consumer Fraud Act (the "CFA"), N.J.S.A. 56:8-2, which provides broad legal protection to New Jersey consumers against deceptive commercial practices, states as follows:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

N.J.S.A. § 56:8-19.

64. In particular, the CFA expressly prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise....or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice…

N.J.S.A. § 56:8-2.

65. The CFA also prohibits "[t]he advertisement of merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price." N.J.S.A. § 56:8-2.2.

66. The Facilities' long-term care services are "merchandise" as defined by the CFA, as it was a "service…offered directly to the public for sale." N.J.S.A. § 56:8-1(c).

67. Defendants have engaged in deceptive, misleading and unconscionable commercial practices through various acts and omissions in advertising and promoting the Facilities and the quality of the services they provide to consumers.

68. Defendants have made false promises, misrepresentations, and deceptive statements and knowingly concealed, suppressed or omitted pertinent information in an attempt to mislead consumers, including members of the Class and Plaintiff, into believing that the Facilities were compliant with all applicable statutes, codes, regulations and laws and that they provided high-quality services with preventative safety measures in place to adequately protect their residents and/or patients.

69. These false, misleading and/or deceptive statements include, without limitation:

a. Despite the extensive and serious history of regulatory violations of both Facilities, and the 'one star' overall rating given by CMS to Andover II – the lowest possible score which is classified as "much below average" – the Facilities' combined website (www.andoverrehab.com) has stated, since at least August 15, 2014 through the present, that the Facilities have an "excellent reputation with regulatory agencies and comply with stringent local, state and federal standards."

b. Despite CMS labeling the "scope and severity" of Andover II's deficiencies as level 'K,' which is indicative of a "pattern" of deficiencies that creates an "[i]mmediate jeopardy to resident health and safety," the Andover II-specific website (www.asrctwo.com) has stated, since at least October 2015 through the present, that the facility "[p]rovides a physically safe and therapeutic environment."

c. The Andover II-specific website states that the facility "offer[s] the most qualified health care professionals, who are dedicated to providing the highest quality of care to all our residents…"

70. Defendants also made similarly misleading and deceptive statements in print-ads, brochures, television commercials, and other marketing materials.

71. Defendants intended for consumers, including members of the Class and Plaintiff, to rely upon the aforementioned misstatements, omissions, false promises, and misrepresentations, in an attempt to fraudulently induce them into procuring the Facilities' services, and the members of the Class and Plaintiffs did reasonably rely on the same.

72. Defendants have also engaged in unconscionable consumer practices by intentionally suppressing or delaying the reporting of resident deaths to relevant authorities, family members, authorized representatives, and/or life insurance companies, intentionally withholding and refusing to disclose vital information to family members and other authorized representatives, and concealing bodies of recently deceased residents, with the intent that said third parties, including the members of the Class and Plaintiff, rely upon their deceptive and misleading conduct in connection with the promotion of the Facilities' services.

73. In addition, Defendants' violations of the aforementioned state nursing home laws, N.J.S.A. 8:39-4, et seq., federal nursing home laws, 42 C.F.R. § 483.1, et seq., and any other applicable statutes, regulations, codes, and/or laws, also constitute unconscionable commercial practices in violation of the CFA.

74. Defendants' conduct constituted deception, fraud, unconscionable commercial practices, and unlawful conduct in violation of the CFA.

75. As a direct, proximate and foreseeable result of Defendants' violations of the CFA, the members of the Class and Plaintiffs were misled and were caused to suffer ascertainable loss.

**WHEREFORE**, Plaintiffs demands judgment for himself and the members of the Class as follows:

a. The Court enter a determination that this action is a proper class action pursuant to FRCP 23(a) and 23(b); and

b. The Court enter an order certifying the Class pursuant to pursuant to FRCP 23(a) and 23(b) and appointing the undersigned counsel as the representative thereof;

c. The Court enter an Order awarding declaratory and injunctive relief, as permitted by law, requiring Defendants to send formal notice to all members of the Class, advising them of the declaratory ruling, the pendency of the action, and of their respective rights;

d. The Court enter an Order requiring Defendants to pay to the members of the Class and Plaintiffs joint and several damages, economic, monetary and consequential damages, compensatory damages, punitive damages, treble damages and/or statutory damages;

e. The Court enter an Order awarding to Plaintiffs, individually and on behalf of the members of the Class, pre-judgment and post-judgment interest to the extent allowable by law;

f. The Court enter an Order awarding to Plaintiff, individually and on behalf of the members of the Class, his expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent allowable by law; and

g. For such other relief as the Court deems equitable, just and proper.

Dated: December 21, 2020

By: ______________________

Alina Habba, Esq.
HABBA MADAIO & ASSOCIATES LLP
*Counsel for Plaintiffs and the Class*
1430 U.S. Highway 206, Suite 240
Bedminster, NJ 07921
(908) 869-1188
ahabba@habbalaw.com

By: _Benjamin Zakarin /s/__________________

Benjamin Zakarin, Esq.
THE SULTZER LAW GROUP P.C.
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 214-2827
Fax: (888) 749-7747
zakarinb@thesultzerlawgroup.com
*Counsel for Plaintiffs and the Class*