HABBA MADAIO & ASSOCIATES LLP

Alina Habba, Esq.
N.J. Bar Number 018592010
1430 US Highway 206, Suite 240
Bedminster, NJ 07921
(908) 869-1188
*Counsel for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL EMERSON, ESTATE OF ALBERT C. ROBERTS BY BRIAN ROBERTS, ADMINISTRATOR AD PROSEQUENDUM, AND ESTATE OF MICHELE DESBIENS BY PAUL DESBIENS, ADMINISTRATOR AD PROSEQUENDUM, individually on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**ANDOVER SUBACUTE REHABILITATION CENTER I, ANDOVER SUBACUTE REHABILITATION CENTER II, ALTITUDE INVESTMENTS, LTD, ALLIANCE HEALTHCARE, HEALTHCARE SERVICES GROUP, JOHN DOES 1 through 100, said names being fictitious and unknown persons, and ABC CORPORATIONS 1 through 100, said names being fictious and unknown entities,**<br><br>**Defendants.** | **CIVIL ACTION NO.: 2:20-cv-20066** |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………………4

LEGAL ARGUMENT…………………………………………………………………6

I.     STANDARD OF REVIEW……...………………………………………6

II.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE PREP ACT………………7

III.   PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY THE PREP ACT……...…11

IV.   THE NEW JERSEY COVID IMMUNITY STATUTE DOES NOT BAR PLAINTIFFS' CLAIMS………………………………………………15

V.    DEFENDANTS DO NOT FALL WITHIN THE "LEARNED PROFESSIONALS" EXCEPTION……………………………………………15

CONCLUSION………………………………………………………………………19

## TABLE OF AUTHORITIES

**Cases**

§247d-6d(b)(8), ................................................................................................... 13

21 USCS §§ 301 .................................................................................................. 13

42 C.F.R. § 483.10(b)(4)). ................................................................................... 11

42 C.F.R. § 483.10(f)(1) ......................................................................................... 6

42 C.F.R. § 483.10-12 ............................................................................................ 6

42 C.F.R. 483.10(a)(1) ........................................................................................... 6

42 C.F.R. 483.10(c)(2) ........................................................................................... 6

42 U.S.C.  §§ 247d-6d(i)(1) ................................................................................... 8

42 U.S.C. § 1983 .................................................................................................... 5

42 U.S.C. § 247d-6d(a)(1) ..................................................................................... 9

42 U.S.C. 1396(r)(c)(1)(A)(ii)) ............................................................................. 6

42 U.S.C. 1396r .................................................................................................... 6

42 U.S.C.S. § 247d-6d (P.L. 116-344) (Jan. 13, 2021)...................................... 13

42 USCS §§ 201 ................................................................................................... 13

*ALA v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994) ........................................... 7

*Associates Home Equity Servs. v. Troup*, 343 N.J. Super. 254, 278 (App. Div. 2001) ............... 17

*Blatterfein v. Larken Assocs.*, 323 N.J. Super. 167, 183 (App. Div. 1999) .................. 19

*Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 555 (2009); ....................................... 17

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)........................... 8

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)........................................ 13

*Cox v. Sears Roebuck & Co.*, 138 N. J. 2, 15 (1994) ............................................ 16

*Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 15 (1994)............................................. 17

*Dupervil v. All. Health Operations, LLC*, No. 20-CV-4042 (PKC) (PK), 2021 U.S. Dist. LEXIS 20257, at *33-34 (E.D.N.Y. Feb. 2, 2021)................................ 11

*Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 529 (D.N.J. 2020). . 9

*Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 530-31 (D.N.J. Aug. 12, 2020) ..................................................................................................................... 13

FDCA. See 42 U.S.C. §§ 247d-6d(i)(1)(C)-(D) ........................................................................ 8

Federal Practice & Procedure § 1357 (3d ed. 2004) ............................................................... 8

*Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963) ...................... 14

*Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) ......................................................... 14

*Gennari v. Weichert Co. Realtors*, 148 N.J. 532, 604 (1997) ................................................. 17

*Gonzalez v. Wilshire Credit Corp, of American*, 150 N.J. 255, 262 (1997) ........................... 17

*Grammar v. John J. Kane Reg'l Centers – Glen Hazel*, 570 F.3d 520 (3d Cir. 2009) ............... 6

*Jefferson Loan Co. v. Session*, 397 N.J. Super. 520, 533-34 (App; Div. 2008); ....................... 17

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994) ..................... 7

*Kugler v. Roman*, 58 N.J. 522, 544 (1971). ......................................................................... 17

*Lemelledo v. Beneficial Management Corp. of America*, 150 N.J. 255 (1997) ........................ 19

*Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 264 (1997) .............................. 17

*Macedo v. Dello Russo*, 178 N.J. 340, 346-7 (2004) ............................................................ 17

*Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 532 (D.N.J. Aug. 12, 2020.. 14

N.J.A.C. § 8:39-4.1 ................................................................................................................. 6

N.J.S.A. § 30:13-1 ................................................................................................................. 6

N.J.S.A. § 30:13-5(g) .......................................................................................................... 7, 10

N.J.S.A. § 30:13-8 ................................................................................................................. 7

*New Mea Const. Corp. v. Harper*, 203 N.J. Super. 486, 501-02 (App. Div. 1985) ..................... 17

NJSA 30:13-5 to -8 ................................................................................................................. 5

NJSA 56:8-2 .......................................................................................................................... 5

*Plemmons v. Blue Chip Ins. Servs., Inc.*, 387 N.J. Super. 551 (App. Div. 2006) ...................... 18

*PLIVA v. Mensing*, 564 U.S. 604, 620 (2011); ..................................................................... 14

*S&D Environmental Services, Inc. v. Rosenberg Rich Baker Barman & Co., P.A.*, 334 N.J. Super. 305, 321 (Law Div. 1999) ............................................................................................ 19

*See Barry v. Arrow Pontiac*, 100 N.J. 57, 69 (1985) ............................................................. 17

*Shaw v. Shand*, 460 N.J. Super. 592 (App. Div. 2019) ......................................................... 18

*Shaw v. Shand*, 460 N.J. Super. 592, 599 (App. Div. 2019) ................................................. 19

*Shaw v. Shand*, 460 N.J. Super. 592, 618-19 (App. Div. 2019). ........................................... 17

*Watesloov Gutter Protection Systems, Inc. v. Absolute Gutter Protection, LLC*, 64 F. Supp. 2d 398, 422 (D.N.J. 1999) ......................................................................................................... 20

*Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627 (2013) ........................................................... 14

*Wyeth v. Levine*, 555 U.S. 555, 573 (2009) ......................................................................... 14

## STATUTES

§247d-6d(b)(8), ..................................................................................................................... 14

21 USCS §§ 301 ..................................................................................................................... 14

42 C.F.R. § 483.10(b)(4)). ..................................................................................................... 12

42 C.F.R. § 483.10(f)(1) .......................................................................................................... 7

42 C.F.R. § 483.10-12 ............................................................................................................ 7

3

42 C.F.R. 483.10(a)(1) ......................................................................................... 7

42 C.F.R. 483.10(c)(2) ......................................................................................... 7

42 U.S.C. §§ 247d-6d(i)(1) ................................................................................ 9

42 U.S.C. § 1983 .................................................................................................. 6

42 U.S.C. § 247d-6d(a)(1) ............................................................................... 10

42 U.S.C. 1396(r)(c)(1)(A)(ii)) ........................................................................... 7

42 U.S.C. 1396r ................................................................................................... 7

42 U.S.C.S. § 247d-6d (P.L. 116-344) (Jan. 13, 2021) .................................. 14

42 USCS §§ 201 ................................................................................................. 14

FDCA. See 42 U.S.C. §§ 247d-6d(i)(1)(C)-(D) ............................................... 9

Federal Practice & Procedure § 1357 (3d ed. 2004) ....................................... 9

N.J.A.C. § 8:39-4.1 .............................................................................................. 7

N.J.S.A. § 30:13-1 ............................................................................................... 7

N.J.S.A. § 30:13-5(g) ...................................................................................... 8, 11

N.J.S.A. § 30:13-8 ............................................................................................... 8

N.J.S.A. § 30:13-5 to -8 ...................................................................................... 6

N.J.S.A. § 56:8-2 ................................................................................................. 6

## PRELIMINARY STATEMENT

Defendants, presumably answering an entirely different Complaint than the operative Complaint here, insist that Plaintiffs' claims must be dismissed because "the crux of the action is that defendants negligently used covered countermeasures, such as PPE and thermometers, in combatting COVID-19 at their facilities," rendering all of Plaintiffs' claims barred by the Public Readiness and Emergency Preparedness Act ("PREP Act") and New Jersey's COVID-19-related immunity statute for certain persons providing medical treatment to COVID-19 patients. (ECF No. 19-1 at 9). Despite their insistence to the contrary, none of Plaintiffs' claims are premised on "defendants negligently us[ing] covered countermeasures . . . in combatting COVID-19 at their facilities." *Id.*

In fact, the actual crux of this action is Defendants' well-documented history of repeatedly violating their residents' rights under both federal and state law, as well as routinely jeopardizing, if not outright harming, their residents' mental and physical well-being. Most of Plaintiffs' claims are not only unrelated to Defendants' use of "covered countermeasures" to combat COVID-19, but are unrelated to the COVID-19 pandemic in any way whatsoever. One example of Defendants' numerous rights violations includes refusing to permit one resident to obtain medical treatment to remove a temporary stent, despite the clear direction to the contrary by that resident's treating physician. Ultimately, the resident died with the stent remaining in her body. Another violation arose when one resident emerged from the sole custody of an Andover employee with an unexplained, fresh black eye. As set forth below, the Court should deny Defendants' motion in its entirety because Plaintiffs state a claim under 42 U.S.C. § 1983, NJSA 30:13-5 to -8, and the Consumer Fraud Act, NJSA 56:8-2 *et seq*.

## RIGHTS OF NURSING HOME RESIDENTS UNDER FEDERAL AND STATE LAW

As residents of nursing homes within the meaning of the 1987 Omnibus Budget and Reconciliation Act ("OBRA") and the Federal Nursing Home Reform Act ("FNHRA") Plaintiffs were vested with substantive rights created under the FNHRA and its implementing regulations, specifically as set forth at 42 U.S.C. 1396r and 42 C.F.R. § 483.10-12.  *See Grammar v. John J. Kane Reg'l Centers – Glen Hazel*, 570 F.3d 520 (3d Cir. 2009).  Among these rights are the right to be "free from physical or mental abuse," (42 U.S.C. 1396(r)(c)(1)(A)(ii)); the right to be treated "with respect and dignity and care for each resident and in an environment that promotes maintenance or enhancement of his or her quality of life," (42 C.F.R. 483.10(a)(1)); the right "to be informed of, and participate in, his or her treatment," including the right to "participate in the planning process," to "receive the services and/or items included" in their plan of care (42 C.F.R. 483.10(c)(2)); and the right to choose "health care and providers of health care services. . . ." (42 C.F.R. § 483.10(f)(1)).[1]

The State of New Jersey, through its Nursing Home Act, N.J.S.A. § 30:13-1 *et seq.* and implementing regulations, specifically N.J.A.C. § 8:39-4.1, also provides residents of nursing homes with an array of enforceable rights, including, but not limited to, the right to "participate, to the fullest extent that the resident is able, in planning his or her own medical treatment and care," (N.J.A.C. 8:39-4.1(a)(3)); the right to "be free from physical and mental abuse and/or neglect," (N.J.A.C. 8:39-4.1(a)(5));   the right to be "treated with courtesy, consideration and respect for the resident's dignity and individuality," (N.J.A.C. 8:39-4.1(a)(12)); and the right to

---

[1] Where a resident has appointed a personal representative and that representative is entitled to exercise the resident's rights on the resident's behalf.  42 C.F.R. § 483.10(b)(3).

"obtain . . . . complete and current information concerning his medical diagnosis, treatment, and prognosis. . . ." (N.J.S.A. § 30:13-5(g)). Violations of nursing home residents' rights are actionable pursuant to N.J.S.A. § 30:13-8, which provides a private right of action for "any person or resident whose rights as defined herein are violated," which may be brought in "any court of competent jurisdiction" and authorizes recovery of actual and punitive damages in addition to attorney's fees and costs.[2]

## LEGAL ARGUMENT

### I.   STANDARD OF REVIEW

In deciding whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *ALA v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994); *accord Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). The Court may only dismiss a plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) if there are not "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544 (2007). The factual allegations must be enough to raise a right of relief above the speculative level. See *Wilkerson v. New Media*, 522 F.3d 315, 322 (3d Cir. 2008). While a court is generally limited to the pleadings in deciding a motion to dismiss, "it may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256,

---

[2] As with its federal counterpart, the New Jersey NHA and implementing regulations afford standing to nursing home residents *and* their legal guardians. *See Profeta v. Dover Christian Nursing Home*, 189 N.J. Super. 83 (App. Div. 1983).

260 (3d Cir. 2006) (*quoting* 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004) (citation omitted)).

## II.     PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE PREP ACT

Defendants advance several related arguments based on the Public Readiness and Emergency Preparedness Act ("PREP Act") in an attempt to avoid any accountability for their ongoing violations of their residents' rights, namely, that Plaintiffs' claims are barred by the immunity provisions of the PREP Act and, in the alternative, Plaintiffs' claims are preempted by the PREP Act. As set forth below, none of these arguments are availing and Defendants' Motion should be denied in its entirety.

Scope of the PREP Act

Under the PREP Act, the Secretary of Health and Human Services is empowered to issue a Declaration to provide immunity liability to certain individuals and entities (Covered Persons and Qualified Persons) against any claim of loss caused by, arising out of, relating to, or resulting from the manufacture, distribution, administration, or use of medical countermeasures (Covered Countermeasures). *See* 85 Fed. Reg. 21,012 (April 15, 2020). The statute in turn, along with the Secretary's Declaration, provides that a "covered countermeasure" encompasses any "qualified pandemic or epidemic product," which is a "drug," "biological product," or "device" that meets specified criteria and regulatory standards. 42 U.S.C. §§ 247d-6d(i)(1), 247d-6d(i)(7); Fourth Amended Declaration, 85 Fed. Reg. at 79,193. Covered countermeasures also include "respiratory protective device[s]" approved by NIOSH, as well as drugs, biological products, or devices authorized for emergency use under the FDCA. See 42 U.S.C. §§ 247d-6d(i)(1)(C)-(D); First Amended Declaration, 85 Fed. Reg. at 21,013-14.

Thus, the requirements for PREP Act immunity break down into four elements: "(1) the individual or entity must be a 'covered person'; (2) the legal claim must be for a 'loss'; (3) <u>the loss must have a "causal relationship" with the administration or use of a covered countermeasure;</u> and (4) <u>the medical product that caused the loss must be a 'covered countermeasure.'</u>"[3]  The third and fourth elements of a PREP Act claim set forth above set clear limits on the scope of PREP Act immunity from liability.  These limitations were confirmed in a December 9, 2020 Amendment to the Health and Human Services Secretary's March 10, 2020 Declaration under the PREP Act, which provided that "[c]laims for which Covered Persons are provided immunity under the [PREP] Act are losses caused by, arising out of, relating to, or resulting from the administration to or use by an individual of a Covered Countermeasure consistent with the terms of a Declaration issued under the Act."   85 Fed. Reg. 79196 (Dec. 9, 2020).  This is consistent with the PREP Act's "evident purpose [ ] to embolden caregivers, permitting them to administer certain encouraged forms of care (listed COVID 'countermeasures') with the assurance that they will not face liability for having done so."  *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 529 (D.N.J. 2020).

<u>Defendants are Not Immune to Plaintiffs' Claims Under the PREP Act</u>

None of Plaintiffs' claims alleges a loss "caused by, arising out of, relating to, or resulting from the administration to . . . an individual" of covered countermeasures.  42 U.S.C. § 247d-6d(a)(1).  Defendants argue that "plaintiffs' complaint on its face alleges that the Andover facilities negligently administered PPE, thermometers and their COVID-19 infection countermeasure program i [sic] to individuals within the facility," meaning they "arise from the nexus between this alleged negligent and improper administration and use of those covered countermeasures and the

---

[3] KEVIN J. HICKEY, CONG. RESEARCH SERV., LSB10443, THE PREP ACT AND COVID-19: LIMITING LIABILITY FOR MEDICAL COUNTERMEASURES, 2 (updated March 19, 2021) (emphasis added).

injuries being alleged in this manner [sic]."  (ECF No. 19-1 at 15).  Tellingly, Defendants do not cite to the operative Complaint in this matter or provide any examples of how Plaintiffs' claims "arise from the nexus" between their admitted failures to protect their residents from COVID-19 and the use of a "covered countermeasure."  They are unable to do so.

The overwhelming majority of Plaintiffs' allegations make no reference to, and in many cases pre-date, the onset of the COVID-19 pandemic.  Plaintiffs have adequately alleged that Defendants consistently and repeatedly violated Plaintiffs' and other residents' rights in numerous ways that implicate neither the COVID-19 pandemic nor the use or administration of any "covered countermeasures" under the PREP Act.  Plaintiffs, by this action, seek to hold Defendants responsible for these abuses.[4]

For example, the Amended Complaint alleges that, in or around early March 2020, Plaintiff Emerson "sustained multiple bruises and a black eye while in the sole custody of an Andover II staff member."  (ECF No. 15 at ¶19(c)).  This textbook example of abuse[5] constitutes a violation of Emerson's state and federal rights that is indisputably unrelated in its entirety to Defendants' nationally-reported failure to protect their residents from COVID-19 or their use or non-use of any "covered countermeasure."  Each of Defendants' repeated refusals to provide Emerson's guardian *ad litem* and attorney-in-fact with Emerson's medical records and information also constitute a violation of Emerson's state and federal rights as a nursing home resident.  *See* 42 C.F.R. 483.10(g)(2); N.J.S.A. § 30:13-5(g).

---

[4] Further, to the limited extent any of Plaintiffs' claims relate to Defendants' admitted failures to protect their residents from COVID-19, Plaintiffs' claims still do not relate to the "use of a covered countermeasure," and are thus not within the scope of the PREP Act.

[5] *See Massaquoi v. N.J. Dep't of Health*, OAL DKT. NO. HLT 11540-17, 2017 NJ AGEN LEXIS 892, Initial Decision (Dec. 21, 2017) (abuse of resident under NHA and implementing regulations established where resident, after being in sole care of CNA, had bruises to her face not previously present).

Similarly, Plaintiffs have adequately alleged a multitude of actionable violations of resident M. Desbiens' state and federal rights that are unrelated to Defendants' failed response to COVID-19.   For example, Desbiens had a ureteral stent inserted into her body in late 2018, which the surgeon instructed should be removed within six months.   Yet, despite this clear medical directive from her treating physician, Andover repeatedly rebuffed the efforts of Desbiens' legal guardian and attorney-in-fact, P. Desbiens, to exercise the right "participate, to the fullest extent [] able, in planning his or her own medical treatment and care," by refusing to let P. Desbiens seek appropriate post-surgical follow-up care for M. Desbiens.   Each of these refusals constituted an independent violation of M. Desbiens' rights under New Jersey law (N.J.A.C. 8:39-4.1(a)(3)) and federal law (42 C.F.R. § 483.10(b)(4)).

The crux of Plaintiffs' few COVID-related claims is that they were harmed because Defendants failed to take certain steps such as separating residents, enforcing social distancing among residents and staff, cancelling group and communal activities, ensuring adequate staffing levels, enforcing mask-wearing, and screening people entering the facility for symptoms of COVID-19.   These failures "do not involve administering, or even purposefully allocating, 'covered countermeasures,' which the plain terms of the PREP Act define as certain drugs, biological products, and devices."   *Dupervil v. All. Health Operations, LLC*, No. 20-CV-4042 (PKC) (PK), 2021 U.S. Dist. LEXIS 20257, at *33-34 (E.D.N.Y. Feb. 2, 2021) (denying motion to dismiss because claims fell outside the PREP Act's immunity for losses relating to the use of covered countermeasures); *see also Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518 (D.N.J. Aug. 12, 2020) (finding no preemption or immunity under PREP Act where claims were not for losses related to use of covered countermeasures).   Accordingly, none of Plaintiffs'

claims—whether or not related to COVID—are subject to the PREP Act's immunity provisions and the PREP Act does not provide a basis for dismissal for failure to state a claim.

### III.    PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY THE PREP ACT[6]

Based on their implausibly broad reading of the scope of the PREP Act and their mischaracterization of Plaintiffs' allegations, Defendants incorrectly insist that the PREP Act preempts Plaintiffs' claims arising under the New Jersey Nursing Home Act.  (ECF No. 19-1 at 22).  As set forth above, Plaintiffs' claims do not "relate to" the administration of a covered countermeasure, despite Defendants' efforts to mischaracterize them to the contrary, placing them outside the scope of the PREP Act.  Accordingly, Plaintiffs' claims are not preempted by the PREP Act.

Defendants raise two preemption arguments: "complete preemption" and "conflict preemption."  In doing so, Defendants merely cite a single decision from the Central District of California, *Garcia v. Welltower OpCo Group*, in support of their argument that the PREP Act "is a 'complete preemption' statute which extends immunity to anything 'relating to' the administration of a covered countermeasure."  (ECF No. 19-1 at 23).  Whether or not *Garcia* was accurately decided—which Plaintiffs contend it was not—that holding offers no relief to Defendants because Plaintiffs claims are not for "anything 'relating to' the administration of a covered countermeasure."  *Id.*

Complete preemption occurs where "the pre-emptive force of a statute is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393

---

[6] Plaintiffs note that the vast majority of their claims are entirely unrelated to the COVID-19 pandemic, but, address Defendants' arguments as they pertain to any claims relating to conduct after the outbreak of COVID-19.

(1987).   Defendants identify 42 U.S.C. 247d-6d(b)(8) as completely preempting Plaintiffs'

claims—both those entirely unrelated to COVID and those entirely unrelated to covered

countermeasures.   That section of the PREP Act provides:

> (8) Preemption of state law. During the effective period of a declaration under
> subsection (b), or at any time with respect to conduct undertaken in accordance with
> such declaration, no State or political subdivision of a State may establish, enforce,
> or continue in effect with respect to a covered countermeasure any provision of law
> or legal requirement that—
>> (A) is different from, or is in conflict with, any requirement applicable
>> under this section; and
>> (B) relates to the design, development, clinical testing or investigation,
>> formulation, manufacture, distribution, sale, donation, purchase, marketing,
>> promotion, packaging, labeling, licensing, use, any other aspect of safety or
>> efficacy, or the prescribing, dispensing, or administration by qualified
>> persons of the covered countermeasure, or to any matter included in a
>> requirement applicable to the covered countermeasure under this section or
>> any other provision of this Act [42 USCS §§ 201 et seq.], or under the
>> Federal Food, Drug, and Cosmetic Act [21 USCS §§ 301 et seq.].

42 U.S.C.S. § 247d-6d (P.L. 116-344) (Jan. 13, 2021).

The plain language of this provision forecloses its potential to "completely preempt" any

of Plaintiffs' claims. In *Maglioli*, Judge McNulty rejected the same interpretation of §247d-

6d(b)(8), holding that provision "at most [. . .] restricts any state from passing a law that conflicts

with the federal government's requirements for the 'design, development, clinical testing or

investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing,

promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the

prescribing, dispensing, or administration,' of covered countermeasures." *Estate of Maglioli v.*

*Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 530-31 (D.N.J. Aug. 12, 2020).

Defendants' second argument for preemption is that Plaintiffs' claims are barred under a

theory of "conflict preemption."   Conflict preemption can occur in two scenarios.  First, where

compliance with both the state and federal laws at issue is a "physical impossibility" for a private

party, the state law will be preempted.  *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963); *see also Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). In assessing whether compliance would be impossible, courts ask "whether [a] private party could independently do under federal law what state law requires of it." *PLIVA v. Mensing*, 564 U.S. 604, 620 (2011); *see, e.g., Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627 (2013) (finding a "direct conflict" between a North Carolina law placing a Medicaid lien on tort recoveries and federal law limiting such liens).   The Court has expressly stated that "[i]mpossibility pre-emption is a demanding defense," that requires "clear evidence" of impossibility to comply with the federal and state requirements at issue.  *Wyeth v. Levine*, 555 U.S. 555, 573 (2009).

There are no conflicting state and federal statutes here, though.[7]  In fact, a court within the District of New Jersey recently addressed the preemptive effect of the PREP Act as it pertains to state law claims unrelated to losses caused by or relating to the manufacture, distribution, administration, or use of covered countermeasures by covered persons.   Faced with the issue of the preemptive effect of the PREP Act in *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, the Honorable Kevin McNulty held Plaintiffs' state law claims for negligence did not "run afoul of conflict preemption by seeking a state law ruling requiring what federal law prohibits, or prohibiting what federal law promotes." *Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 532 (D.N.J. Aug. 12, 2020).  The Court noted that Plaintiffs alleged that Defendants "*failed* to take countermeasures, some of them allegedly federally required."  *Id.*  Noting that "[n]othing in the language of the Act suggests that it was intended to more broadly displace state-law causes of action for, e.g., malpractice or substandard care—even if proper care possibly *would* have

---

[7] In fact, Defendants expressly acknowledge that the Federal and New Jersey Nursing Home Acts "mirror one another."  ECF No. 19-1 at 24.

entailed administration of such countermeasures," Judge McNulty held that that "claims concerning the quality of care do not fall within the scope of the PREP Act." *Id.* Since Plaintiffs' claims, to the limited extent they concern COVID-19, are "claims concerning the quality of care," they are not preempted by the PREP Act. Accordingly, Defendants' preemption arguments fail and should be denied.

## IV.   SINCE THE PREP ACT DOES NOT APPLY, THIS COURT HAS SUBJECT MATTER JURISDICTION

Defendants argue that this Court lacks subject matter jurisdiction because, under their theory, Plaintiffs did not avail themselves of the administrative remedies provided under the PREP Act. (ECF No. 19-1 at 16). Defendants insist that Plaintiffs were required to pursue their claims through the Federal "Countermeasure Injury Compensation Program" ("CIPC"). *Id.*

However, as set forth above, none of Plaintiffs' claims are subject to the limitations and requirements under the PREP Act because none of Plaintiffs' claims relate to the use or administration of any "covered countermeasure" under the PREP Act. Indeed, the relevant statutory provision authorizing the CICP states it is intended for "providing timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure…" (42 U.S.C. 247d-6e(a)) (emphasis added). The provision only provides that "a covered individual may not bring a civil action under section 247d-6d(d) of this title against a covered person . . . unless such individual has exhausted such remedies are available under subsection (a)." 42 U.S.C. §247d-6e(d) (emphasis added). Plaintiffs' claims are neither arising under or brought pursuant to section 247d-6(d)—or any other section of the PREP Act, for that matter. Since Plaintiffs do not seek relief for any covered injuries "caused by the administration or use of a covered countermeasure," none of Plaintiffs' claims were subject to the limitations of the PREP Act or its exhaustion of administrative remedies and exclusivity

provisions.

## IV. **THE NEW JERSEY COVID IMMUNITY STATUTE DOES NOT BAR PLAINTIFFS' CLAIMS**

  Similarly, New Jersey's state-specific statute providing limited immunity for certain medical providers does not bar Plaintiffs' claims.  On April 14, 2020, Governor Murphy signed into law S-2333/A-3910, which provides limited civil and criminal immunity to certain medical providers and facilities for acts or omissions committed "in the course of providing medical services in support of the State's response to the outbreak of coronavirus disease during the public health emergency and state of emergency declared by the Governor in Executive Order 103 of 2020."  (P.L. 2020, Ch. 18; S-2333/A-3910) (April 14, 2020) (the "NJ COVID Immunity Law").  The Legislature did not leave to chance the possibility that this limited immunity would be stretched beyond its intended scope by including the following statement of legislative intent in the bill's text, stating it was only intended "to ensure there are no impediments to providing medical treatment related to the COVID-19 emergency . . . . it is not the Legislature's intent to grant immunity for medical services, treatment, and procedures that are unrelated to the COVID-19 emergency.  *Id.* at ¶ 1(a).  Accordingly, Plaintiffs' claims are not implicated or prohibited by the NJ COVID Immunity Law.

## V. **DEFENDANTS DO NOT FALL WITHIN THE "LEARNED PROFESSIONALS" EXCEPTION.**

  The Consumer Fraud Act ("CFA") prohibits any "misrepresentation," "knowing . . . omission," or "unconscionable commercial practice" in connection with sales and service transactions and the subsequent performance of sales and service contracts. N.J.S.A. 56:8-2, It is one of the broadest and most powerful statutes of its type in the nation. *See, e.g., Cox v. Sears Roebuck & Co.*, 138 N. J. 2, 15 (1994) (CFA was enacted to be "one of the strongest consumer

protection laws in the nation"); *accord Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 555 (2009); *Jefferson Loan Co. v. Session*, 397 N.J. Super. 520, 533-34 (App; Div. 2008); *New Mea Const. Corp. v. Harper*, 203 N.J. Super. 486, 501-02 (App. Div. 1985). "The history of the Act is one of constant expansion of consumer protection." *Gennari v. Weichert Co. Realtors*, 148 N.J. 532, 604 (1997).

The language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud. *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 264 (1997).  It is intended to be liberally construed in favor of the consumer.  *See Barry v. Arrow Pontiac*, 100 N.J. 57, 69 (1985); *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 15 (1994).  This is especially so in cases involving vulnerable consumers who face substantial inequities in bargaining power. *Gonzalez v. Wilshire Credit Corp, of American*, 150 N.J. 255, 262 (1997); *Associates Home Equity Servs. v. Troup*, 343 N.J. Super. 254, 278 (App. Div. 2001) (need for application of the CFA unconscionability standard "is most acute" in cases involving "those most subject to exploitation"), *quoting Kugler v. Roman*, 58 N.J. 522, 544 (1971).

<u>The "Learned Professional" Exception to the CFA</u>

Courts applying the CFA apply a judicially-developed doctrine called the "learned professional exception" to the CFA.  Under the learned professional exception, certain professions that are subject to comprehensive regulation <u>and</u> "who have historically been recognized as 'learned' based on the requirement of extensive learning or erudition," are not subject to the CFA in the rendering of their professional services.  *See, e.g. Macedo v. Dello Russo*, 178 N.J. 340, 346-7 (2004); *see further Shaw v. Shand*, 460 N.J. Super. 592, 618-19 (App. Div. 2019).   However,

17

the doctrine is "narrowly construed," and does not apply to semi-professionals and professionals acting outside of their professional capacity. *Id.*

"Semi-professionals" are presumptively subject to the CFA. In *Lemelledo*, New Jersey's Supreme Court rejected a lender's argument that a CFA claim over "loan packing practices" was preempted by other statutes governing lending activities. *Id*. at 266, 696 A.2d 546. The Court applied a "presumption that the CFA applies to covered practices, even in the face of other existing sources of regulation, [which] preserves the Legislature's determination to effect a broad delegation of enforcement authority to combat consumer fraud. *Id*. at 270, 696 A.2d 546.

The Court established a rigorous test for determining whether another statute or regulatory scheme preempted the CFA:

> In order to overcome the presumption that the CFA applies to a covered activity, a court must be satisfied . . . that a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme or schemes. It must be convinced that the other source or sources of regulation deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes. We stress that the conflict must be patent and sharp and must not simply constitute a mere possibility of incompatibility. Ibid.

The Appellate Court reinforced the *Lemelledo* test and dramatically eroded the availability of the CFA exemption for "semi-professionals" by requiring a semi-professional to establish a clear conflict between the CFA and any applicable licensing regulations before the semi-professional is entitled to exemption. *Shaw v. Shand*, 460 N.J. Super. 592 (App. Div. 2019). The Shaw Court specifically overruled *Plemmons v. Blue Chip Ins. Servs., Inc.*, 387 N.J. Super. 551 (App. Div. 2006), a case cited by Defendants, in stating that "To the extent our prior decisions, including *Plemmons v. Blue Chip Insurance Services, Inc.*, have applied the learned professional exception to semi-professionals who are regulated by a separate regulatory scheme, the Appellate

18

Division is constrained, upon further review, to depart from that reasoning as inconsistent with the New Jersey Supreme Court's decision in *Lemelledo v. Beneficial Management Corp. of America*, 150 N.J. 255 (1997)." The Appellate Court further found that to the extent the Supreme Court continues to recognize a learned professional doctrine, ideally that doctrine should be narrowly construed to include only those professions who have historically been recognized as learned based on the requirement of extensive learning or erudition. *Shaw v. Shand*, 460 N.J. Super. 592, 599 (App. Div. 2019). Based on the foregoing caselaw, it is apparent that the learned professional exception does not apply to the case at bar.

Contrary to Defendants' assertion, "learned professionals" do not enjoy a blanket exemption from CFA liability and are subject to the CFA when they are acting outside of their professional capacity. *See Dello Russo*, 178 N.J. at 346 (Court does "not . . . suggest that Dr. Dello Russo would be insulated from the restraints of the CFA if he acted outside his professional capacity"); *Blatterfein v. Larken Assocs.*, 323 N.J. Super. 167, 183 (App. Div. 1999) (architect's involvement in new home construction did not trigger learned professions exception where architect's fee was incorporated into the price of the homes); *S&D Environmental Services, Inc. v. Rosenberg Rich Baker Barman & Co., P.A.*, 334 N.J. Super. 305, 321 (Law Div. 1999) (declining to dismiss CFA claim where "the alleged wrongful conduct by [accountants] did not involve plaintiff's rights as clients of any professional but instead were linked to and were instrumental in a transaction covered by the Act"). The contours of the exception are carefully drawn, and require a searching factual inquiry in each case:

> While professionals do not seem to he per se exempt from the CFA they do not seem to be per se covered either. Discerning whether or not a professional is subject to the CFA in a particular circumstance will depend on a number of factors including the degree and type of regulation that a professional's activities are subject to outside of the CFA and the type of transaction involved.

*Watesloov Gutter Protection Systems, Inc. v. Absolute Gutter Protection, LLC*, 64 F. Supp.

2d 398, 422 (D.N.J. 1999) (citation omitted).

In the Amended Complaint, Plaintiffs' CFA claims are directed against Defendants'

deceptive, misleading, and unconscionable commercial practice of misrepresenting the quality of

their nursing facilities and intentional suppression of the number of deaths at the facilities.

Specifically, Plaintiff alleges that Defendants falsely advertised that their facilities had an

"excellent reputation with regulatory agencies" despite receiving a one-star rating from the

Department of Health and Human Services for regulatory compliance. Plaintiffs further pled that

Defendants have engaged in unconscionable consumer practices by intentionally suppressing the

reporting of resident deaths and the concealment of bodies of deceased residents. Defendants'

decision to intentionally mislead Plaintiffs involved no exercise of medical discretion. Nor have

the Defendants posited that a direct and unavoidable conflict exists between application of the

CFA and application of the other regulatory scheme or schemes. In light of these principles and

authorities, as applied to the facts alleged in this case, it is clear that the learned professions

exception should not apply to exempt Defendants from liability under the CFA.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Court deny

Defendants' Motion to Dismiss in its entirety and enter an order stating the same.

Dated: May 24, 2021                    By:    _____

Alina Habba, Esq.
HABBA MADAIO & ASSOCIATES LLP
*Counsel for Plaintiffs and the Class*
1430 U.S. Highway 206, Suite 240
Bedminster, NJ 07921
(908) 869-1188
ahabba@habbalaw.com

By:

Benjamin Zakarin, Esq.
THE SULTZER LAW GROUP P.C.
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 214-2827
zakarinb@thesultzerlawgroup.com

*Counsel for Plaintiffs and the Class*