**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MICHAEL EMERSON, *et al.*,<br><br>                        Plaintiffs,<br><br>          v.<br><br>ANDOVER SUBACUTE<br>REHABILITATION CENTER I, *et al.*,<br><br>                        Defendants. | Civil Action No. 20-20066 (JXN)(AME)<br><br><br>**<u>OPINION</u>** |

**<u>NEALS</u>**, District Judge

Before the Court is Defendants'[1] motion for reconsideration of the Court's prior Opinion and Order (ECF Nos. 81, 82) granting in part Defendants' motion to dismiss. (ECF No. 83). Plaintiffs[2] opposed (ECF No. 88), and Defendants replied (ECF No. 89). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure[3] 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion for reconsideration is **DENIED**.

I.       **<u>BACKGROUND</u>**

       A.       **Statement of Facts**

       Albert C. Roberts ("Roberts") and Michele Desbiens ("Desbiens") were residents at two New Jersey nursing homes, Andover I and II. (Second Am. Compl. ("SAC") ¶¶ 1–3, ECF No. 55.) Plaintiffs allege Desbiens developed visible signs of skin cancer in early 2018. (*Id.* ¶ 22(b).)

---

[1] "Defendants" collectively refer to Andover Subacute Rehabilitation Center I ("Andover I"), Andover Subacute Rehabilitation Center II ("Andover II"), Altitude Investments, Ltd. ("Altitude"), and Alliance Healthcare ("Alliance").

[2] "Plaintiffs" collectively refer to the Estate of Albert C. Roberts ("Roberts Estate") and the Estate of Michele Desbiens ("Desbiens Estate").

[3] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

Despite her family's urging, Plaintiffs claim Andover II refused to treat the cancer. (*Id.* ¶ 22(c)–(d).) In late 2018, Desbiens had a uteral stent implanted in her body. (*Id.* ¶ 22(f).) The surgeon instructed Desbiens to have it removed in six months. (*Id.* ¶ 22(g).) But, according to Plaintiffs, Andover II refused to "take any action to have the uteral stent removed." (*Id.* ¶ 22(f)–(i).) In May 2020, Desbiens contracted COVID-19 and died later that month. (*Id.* ¶ 22(k)–(l).) When Desbiens died, her skin cancer was left untreated, and the uteral stent remained in her body. (*Id.* ¶ 22(l).)

Roberts contracted COVID-19 in March 2020, and died in April 2020. (*Id.* ¶ 25(b)–(c).) Plaintiffs claim Andover II did not inform Roberts's family of his death for several weeks. (*Id.* ¶ 25(d).) Plaintiffs assert Desbiens and Roberts contracted COVID-19 because "Defendants failed to employ any available measures, strategies or tactics to stop the spread of COVID-19." (*Id.* ¶¶ 19(c), 22(k), 25(b).) And they allege the harm Plaintiffs suffered was "a direct result of Defendants' failure to comply with the applicable federal and state nursing home regulations." (*Id.* ¶ 26.) Plaintiffs claim that inspections of Andover I and II between 2015 and 2020, revealed a pattern of non-compliance with state and federal nursing home regulations. (*Id.* ¶¶ 28–34.) Plaintiffs allege the Centers for Medicare and Medicaid Services ("CMS") issued an inspection report in April 2020, finding that Andover II was "not following infection control safety practices and guidance recommended by CMS and the Centers for Disease Control and Prevention ("CDC"), during [the] COVID-19 pandemic." (*Id.* ¶ 35.) This report found Andover II failed to ensure: "appropriate transmission based precautions," infection surveillance and tracking, proper personal protective equipment ("PPE") use, proper staff training, or appropriate precautionary signs. (*Id.* ¶ 36.)

### B.      Procedural History

In December 2020, Plaintiffs filed a class action lawsuit in this Court on behalf of "[a]ll persons who, were residents and/or patients of [Andover I or II], during the applicable statute of limitations period."[4] (*See* Compl. ¶ 43, ECF No. 1.) The Complaint was amended twice. (*See* First Am. Compl., ECF No. 15; SAC.)

The Second Amended Complaint included claims for negligence *per se*; violations of the New Jersey Nursing Home Act ("NHA"), N.J.S.A. 30:13-1 to -13; and violations of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-2. (SAC ¶¶ 55–90.)

Defendants moved to dismiss under Rules 12(b)(6) and 12(b)(1). (*See* Third Mot. Dismiss, ECF No. 59.) Defendants argued, in part, that they could not be held liable under the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d 6d, 247d-6e, and the New Jersey COVID-19 Immunity Statute, L. 2020, ch. 18 ("Immunity Statute"). (*See* Mot. to Dismiss at 7–12, 19–34.) The Court granted the motion to dismiss in part. (*See* Op., ECF No. 81; Order, ECF No. 82.) The Court dismissed with prejudice the negligence *per se* claim, the CFA claim, and the NHA claim to the extent it arose under N.J.S.A. 30:13-3 and N.J.A.C. 8:39-4.1. (Order at 2.) The Court dismissed without prejudice the NHA claim to the extent it arose under N.J.S.A. 30:13-5(m). (*Id.*)

The Court denied the motion to dismiss the NHA claim to the extent it arose under N.J.S.A. 30:13-5(j). N.J.S.A. 30:13-5(j) guarantees nursing home residents the right to "a safe and decent living environment and considerate and respectful care that recognizes the dignity and individuality of the resident, including the right to expect and receive appropriate assessment,

---

[4] Three months earlier, the Roberts Estate filed a similar class action lawsuit in New Jersey Superior Court, (*see* Mot. to Dismiss Ex. A., ECF No. 59-5), but apparently dismissed it prior to filing this lawsuit, (*see* Defs.' Moving Br. 10, ECF No. 59-1).

management and treatment of pain as an integral component of that person's care consistent with sound nursing and medical practices." The Court found that Plaintiffs adequately alleged Defendants violated their rights to "a safe and decent living environment" and "considerate and respectful care." (Op. at 11.)

The Court rejected Defendants' arguments about the PREP Act and the Immunity Statute. First, the Court found the PREP Act did not apply because Plaintiffs' injuries did not arise from "Defendants' administration to them of vaccines or medicines (or for that matter protective gear)." (Op. at 12 (quoting *Est. of Maglioli v. Andover Subacute Rehab. Ctr. I* (*Maglioli I*), 478 F. Supp. 3d 518, 532 (D.N.J. 2020).) Rather, Plaintiffs asserted Defendants negligently failed to take countermeasures. The Court concluded the plain language of the PREP Act protects only "those who employ countermeasures, not those who decline to employ them." (*Id.* (quoting *Maglioli I*, 478 F. Supp. 3d. at 531).) And, while Defendants cited a Department of Health and Human Services ("HHS") Advisory Opinion ("AO") asserting that the non-use of a countermeasure could give rise to PREP Act immunity, the Court joined "a plethora of other courts" in rejecting the AO's expansive interpretation. (*See id.* at 14 n.8 (collecting cases).) Second, the Court found the Immunity Statute did not preclude liability in this case. (*See id.* at 14–15.) The Court noted the Immunity Statute, by its own terms, "shall not apply to acts or omissions constituting a crime, actual fraud, actual malice, gross negligence, recklessness, or willful misconduct, and shall be retroactive to March 9, 2020." (*Id.* at 14.) And, taken as true, Defendants' failure to employ "any available measures, strategies or tactics to stop the spread of COVID-19" after the State and federal governments declared the pandemic a public health emergency could constitute gross negligence.

Defendants move for reconsideration. (*See* Mot. for Recons., ECF No. 83.) They argue that the Court committed clear error in (1) applying the "gross negligence" exception in the Immunity

Statute to Plaintiff's NHA claim; and (2) not applying PREP Act immunity. (*See* Moving Br., ECF No. 83-1.) Plaintiffs opposed (Opp'n Br., ECF No. 84), and Defendants replied (Reply Br., ECF No. 85).

## II.   **LEGAL STANDARD**

Local Civil Rule 7.1(i) governs motions for reconsideration. Reconsideration is "an extraordinary remedy" courts grant "very sparingly." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 215 F. Supp. 2d 482 (D.N.J. 2002) (citations omitted). The Court may grant a motion for reconsideration if the moving party shows (1) "an intervening change in the controlling law"; (2) "the availability of new evidence that was not available when the court granted the motion"; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *Adkins v. Sogliuzzo*, 820 F. App'x 146, 149 (3d Cir. 2020) (quoting *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017)). A court makes a clear error of law "only if the record cannot support the findings that led to the ruling." *In re Insulin Pricing Litig.*, No. 17-699, 2025 WL 2717592, at *2 (D.N.J. Sept. 24, 2025) (quoting *ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*, No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010)).

A motion for reconsideration "is not an appeal." *Interfaith Cmty. Org.*, 215 F. Supp. 2d at 507. The moving party may not "relitigate old matters, raise new arguments, or present evidence or allegations that could have been raised prior to entry of the original order." *Bosco v. Compass Grp. USA, Inc.*, No. 22-6909, 2026 WL 800530, at *2 (D.N.J. Mar. 23, 2026) (quoting *Martinez v. Robinson*, No. 18-1493, 2019 WL 4918115, at *1 (D.N.J. Oct. 4, 2019)). The Court will not grant a reconsideration motion based on "[m]ere disagreement with a decision of the District Court." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001). Rather, the Court will grant a reconsideration motion "only when 'dispositive factual matters or controlling

decisions of law' were presented to the court but were overlooked." *Interfaith Cmty. Org.*, 215 F. Supp. 2d at 507.

### III.   <u>DISCUSSION</u>

#### A.   **The Immunity Statute**

The Immunity Statute provides healthcare professionals, facilities, and systems "shall not be liable for civil damages for injury or death alleged to have been sustained as a result of an act or omission by [a] health care professional in the course of providing medical services in support of the State's response to the [COVID-19 pandemic]." L. 2020, ch. 18 § 1(c). This immunity encompasses "any act or omission undertaken in good faith by a health care professional or healthcare facility or a health care system to support efforts to treat COVID-19 patients and to prevent the spread of COVID-19 during the public health emergency." *Id.* But the statute's immunity does not reach "acts or omissions constituting a crime, actual fraud, actual malice, gross negligence, recklessness, or willful misconduct, and shall be retroactive to March 9, 2020." *Id.*

Defendants argue the Court misinterpreted the Immunity Statute because N.J.S.A. 30:13-5(j) claims are not "recognized exceptions to the causes of actions protected under the Act" and N.J.S.A. 30:13-5(j) claims are not gross negligence claims. (Moving Br. at 10–15.)

These arguments lack merit. Initially, Defendants' interpretation of the Immunity Statute is misguided. "In statutory interpretation cases, this Court aims to effectuate the Legislature's intent." *W.S. v. Hildreth*, 252 N.J. 506, 518 (2023) (quoting *Gilleran v. Township of Bloomfield*, 227 N.J. 159, 171 (2016)). "[T]he best indicator of that intent is the statutory language." *DiProspero v. Penn*, 183 N.J. 477, 492 (2005). The Court gives words "their ordinary meaning and significance," and reads them "in context with related provisions so as to give sense to the legislation as a whole." *Id.* (citation omitted). If the statutory language is "clear and unambiguous,"

the inquiry ends and the Court simply applies the law as written. *State v. J.V.*, 242 N.J. 432, 443 (2020). If, on the other hand, the statutory language "leads to more than one plausible interpretation" or "an absurd result," or "the overall statutory scheme is at odds with the plain language," the Court may resort to extrinsic interpretive aids. *DiProspero*, 183 N.J. at 492–93.

The Court's inquiry starts and ends with the plain language of the Immunity Statute. The Immunity Statute does not protect "acts or omissions constituting a crime, actual fraud, actual malice, gross negligence, recklessness, or willful misconduct." L. 2020, ch. 18 § 1(c). "Constitute" means to "[t]o make up, form, compose; to be the elements or material of which the thing spoken of consists." *Constitute*, Oxford Eng. Dictionary, https://doi.org/10.1093/OED/5821770351 (last visited May 29, 2026). Put simply, the statute focuses on *conduct*, not *causes of action*. The question is whether the defendant's acts or omissions make up a crime, fraud, malice, gross negligence, recklessness, or willful misconduct. If the answer is "no," the Immunity Statute applies. If the answer is "yes," it does not. *Cf. Est. of Campbell ex rel. Campbell v. Woodcliff Health & Rehab. Ctr.*, 479 N.J. Super. 64, 88 (App. Div. 2024) (concluding Immunity Statute applied where "plaintiff did not plead facts that would permit a reasonable jury to conclude defendants were indifferent to Mrs. Campbell or acted egregiously in 'thoughtless disregard of the consequences' to her or her husband by discharging her from Woodcliff while the result of her PCR test was pending.").

Here, the answer was "yes." Taking Plaintiffs' well-pled factual allegations as true and viewing the Second Amended Complaint in the light most favorable to Plaintiffs, as the Court must, *see Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), Defendants' alleged failure to employ "*any* available measures, strategies or tactics to stop the spread of COVID-19"

constituted gross negligence. (Op. at 15 (emphasis added)). Because Plaintiffs' N.J.S.A. 30:13-5(j) claim arose from grossly negligent conduct, the Immunity Statute did not preclude liability.[5]

## B.    The PREP Act

The PREP Act grants immunity from suit to "covered persons" who use a "covered countermeasure" during a public health emergency. *Maglioli v. All. HC Holdings LLC* (*Maglioli II*), 16 F.4th 393, 400–01 (3d Cir. 2021). But as this Court (and others within this Circuit) determined, the PREP Act does not grant immunity for the *nonuse* of a covered countermeasure. (*See* Op. at 13 (first quoting *Maglioli I*, 478 F. Supp. 3d at 531–32; and then quoting *Testa v. Broomall Operating Co., L.P.*, 622 F. Supp. 3d 4, 10 (E.D. Pa. 2022)).) And, while HHS issued an AO opining that the PREP Act could confer immunity for the nonuse of a covered countermeasure, this Court (along with many others) rejected the AO as non-binding, bereft of supporting authority, and at odds with the plain language of the PREP Act. (*See id.* at 14 n.8.)

Defendants argue that the Court incorrectly concluded the PREP Act did not immunize Defendants from the failure to use "covered countermeasures" because of a 2025 case decided in the Middle District of Alabama, *Searcy v. Pfizer, Inc.*, 801 F. Supp. 3d 1247 (M.D. Ala. 2025).

---

[5] Defendants cite two unpublished Law Division cases that purport to provide "new case law" for the Court to consider: *Estate of Rendfrey v. Canterbury Care & Rehabilitation*, ESX-L-2197-22 (N.J. Super. Ct. Mar. 4, 2025), and *Youssef v. Alaris Health, LLC*, HUD-L-1178-20 (N.J. Super. Ct. Feb. 16, 2023). Both cases, however, were decided *before* this Court ruled on Defendants' motion to dismiss. Defendants made no mention of either decision in their papers, nor did they seek to notify the Court of any supplemental authority. (*See* Defs.' Moving Br. on Mot. to Dismiss, ECF No. 59; Defs.' Reply Br. on Mot. to Dismiss, ECF No. 77.) A reconsideration motion does not give Defendants the opportunity to newly present cases they could have cited to earlier. *Bosco*, 2026 WL 800530, at *2.

Moreover, neither case merits reconsideration. *Rendfrey* is consistent with this Court's analysis. There, as here, the plaintiff alleged an NHA violation. *Rendfrey*, ESX-L-2197-22, at 2. And there, as here, the court analyzed the defendant's conduct to determine if it rose to the level of gross negligence or recklessness. *Id.* at 6. While the *Rendfrey* court reached a different conclusion, the facts were different. *Id.* at 6 (finding that the act of admitting sixty-eight new patients did not constitute gross negligence).

In *Youssef*, the court concluded the Immunity Statute barred an NHA claim. HUD-L-1178-20, at 30. But *Youssef*, an unpublished opinion, does not constitute New Jersey precedent, nor bind any state court. N.J. Ct. R. 1:36-3. Nor does the one sentence in *Youssef* dedicated to applying the Immunity Statute to an NHA claim persuade this Court to depart from its earlier analysis.

This argument falls flat. *Searcy* is an out-of-Circuit case published over a month before this Court ruled on Defendants' motion to dismiss. And it involved the *use* of a covered countermeasure, namely, Pfizer's COVID-19 vaccine. *Searcy*, 801 F. Supp. 3d at 1258. *Searcy* did not hold the PREP Act immunized the *non-use* of a covered countermeasure, or that the HHS Secretary could expand PREP Act immunity to encompass the same. *See generally id.* Therefore, *Searcy* does not compel the Court to reach a different conclusion.

## IV.      **CONCLUSION**

For the foregoing reasons, Defendants' motion for reconsideration (ECF No. 83) is **DENIED**. An appropriate Order accompanies this Opinion.

**DATED: 6/8/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**

9